IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DETRIC JONES, | ) | Case No. 1:20-cv-2475 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| VILLAGE OF HIGHLAND HILLS, et al., | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER[1]** |
| | ) | |

After being tased and arrested at his apartment, Detric Jones faced criminal charges in Ohio state court.  The state couldn't prove the charges, and the trial judge granted Jones's motion for judgment of acquittal.  Seeking redress, Jones sued the Village of Highland Hills ("Highland Hills") and two of its officers in what became this action.  Now, defendants Highland Hills, Officer Adrian Manjas, and Officer Eric Cvanciger seek summary judgment (ECF Doc. 17) and both object to and seek to strike Jones's untimely declaration (ECF Doc. 26).  For the reasons that follow, the court will GRANT summary judgment in favor of the defendants and STRIKE Jones's declaration.

I.    **Procedural History**

On August 1, 2018, the Bedford Municipal Court bound Jones over to the Cuyahoga County Court of Common Pleas on one count of obstructing official business and one count of

---

[1] The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636, *et seq*. ECF Doc. 8.

resisting arrest.  Docket for Bedford Mun. Ct., Case Nos. 18CRA01354,18CRB01352, docket

sheet; Docket for Cuyahoga Cnty. Ct. of Common Pleas, Case No. CR-18-63192-B, docket

sheet.[2]  A Cuyahoga County, Ohio, grand jury later issued an indictment, charging Jones with

one count of assault on a peace officer.  Docket for Cuyahoga Cnty. Ct. of Common Pleas, Case

No. CR-18-631392-B, journal entry dated 9/11/2018.  Jones pleaded not guilty, and the case

went to trial.  *Id.*, docket sheet.  On June 18, 2019, after the state's case in chief, the trial court

entered a judgment of acquittal in Jones's favor pursuant to Ohio Crim. R. 29.  *Id.*, journal entry

dated 6/26/2019.

    With the aid of counsel, Jones then sued the defendants in the Cuyahoga County Court of

Common Pleas, raising a 42 U.S.C. § 1983 Fourth Amendment claim for use of excessive force

and common law claims of malicious prosecution and negligent training and supervision.  ECF

Doc. 2.  In support, Jones alleged that on July 26, 2018, Officers Manjas and Cvanciger

responded to a call from Jones's neighbor, who reportedly heard screaming from Jones's

apartment.  ECF Doc. 2 at 4.  Officers Manjas and Cvanciger arrived, heard nothing, and

knocked on Jones's door.  *Id.*  Samantha Graham (Jones's then-girlfriend) answered and told the

officers everything was fine.  *Id.*  Graham was removed from the premises, and the officers

arrested Jones, in the course of which he was tased by Officer Manjas.  *Id.*  The last sentence of

Jones's "Facts" section stated,

> The tasering of Plaintiff, the false arrest of Plaintiff and the institution of criminal
> charges against him by Defendants Manjas and Cvanciger was entirely
> unjustified, especially, when there was no disturbance … to begin with and there
> was … no evidence that a crime was or had been[] committed there.  The actions

---

[2] The court takes judicial notice of Jones's criminal proceedings because they are relevant to the
background of the case and because Jones makes reference to his criminal proceedings in his operative
complaint.  ECF Doc. 11 at 3-4; *Lyons v. Stovall*, 188 F.3d 327, 332 (6th Cir. 1999) ("[F]ederal courts
may take judicial notice of proceedings in other courts of record."); *see also Lynch v. Leis*, 382 F.3d 642,
647 n.5 (6th Cir. 2004) (taking judicial notice of online state docket sheet).

of Defendants Manjas and Cvanciger constitute an unreasonable and excessive use of force.

ECF Doc. 2 at 5.

On November 2, 2020, the defendants removed the case to this court and then moved for partial judgment on the pleadings as to Jones's common law claims.  ECF Doc. 1; ECF Doc. 9.

On December 21, 2020, Jones filed an amended complaint, omitting his common law claims.  ECF Doc. 11.  Based on the same allegations of fact, Jones instead raises four causes of action under § 1983.  ECF Doc. 11 at 4-6.  In Count One, Jones claims Officers Manjas and Cvanciger used excessive force, in violation of the Fourth Amendment by "assaulting him with the taser and inflicting on him pain through the use of the taser."  ECF Doc. 11 at 4.  Count Two is the same as Count One, except Jones contends the officers' actions constituted cruel and unusual punishment, in violation of the Eighth Amendment.  ECF Doc. 11 at 4-5.  In Count Three, Jones claims Highland Hills was liable for executing a policy or custom that precipitated and was the moving force behind the officers' unlawful actions.  ECF Doc. 11 at 5.  And in Count Four, Jones claims Highland Hills was deliberately indifferent to his constitutional rights by failing to adequately train, supervise, discipline, or screen the officer defendants regarding the use of taser weapons and progressive use of force.  ECF Doc. 11 at 5-6.

On August 16, 2021, the defendants filed their motion for summary judgment, generally arguing that Counts 2 and 3 failed to state a claim, and that qualified immunity shielded the officer defendants from liability on Count 1, and that Counts 3 and 4 failed as matter of law.[3] ECF Doc. 17.  On September 30, 2021, Jones filed his opposition brief, addressing only the defendants' arguments as to Count 1.  ECF Doc. 22.  At the end of Jones's opposition brief was

---

[3] The parties' arguments in support and against summary judgment will be discussed more fully, on a count-by-count basis, below.

his unsigned declaration, which stated: "Original was mailed to Plaintiff out of town and will be filed when signed.  Plaintiff is aware of, and agrees to all of the contents herein."  ECF Doc. 22 at 9.  On October 4, 2021, the defendants filed their reply brief.  ECF Doc. 23.

On October 26, 2021, Jones filed a signed version of the declaration.  ECF Doc. 25.  On October 27, 2021, the defendants filed an objection/motion to strike the declaration.  ECF Doc. 26.  Jones has filed nothing in response to the objection.

## II.    Facts and Evidence[4]

### A.    Undisputed Facts

On July 26, 2018, Jones and Graham lived together in an apartment building.  ECF Doc. 16 at 13-14, 17 (Jones's Deposition).  Rodney Bell, Jones's neighbor, complained to police that he heard banging on the wall and a female screaming from Jones's apartment.  ECF Doc. 18-1 at 2 (Officer Manjas's declaration).  Officer Manjas and Cvanciger were dispatched to respond to the complaint and, hearing no noise from outside Jones's door, they interviewed Bell, who told the officers he heard "screaming," "hollering," and a woman who sounded in "distress" say "no." ECF Doc. 18-1 at 2; Video File VIDEO_20180726_151823_835.mp4 at 00:24-01:05, 1:52-2:35 (encounter with Bell from Officer Cvanciger's perspective)[5]; Video File VIDEO_20180726_151915_874.mp4 at 00:40-01:27 (encounter with Bell from Officer Manjas's perspective).

The officers then proceeded to Jones's apartment and knocked on the door.  ECF Doc. 16 at 16-17; ECF Doc. 18-1 at 2; Video File VIDEO_20180726_152113_304.mp4 at 00:27-00:33 (hereafter "Manjas Body Camera") (encounter with Graham and Jones from Manjas's perspective); Video File VIDEO_20180726_152113_784 at 00:29-00:33 (hereafter "Cvanciger

---

[4] The following facts are undisputed or established by Rule 56 evidence.
[5] The video evidence was filed manually with the court in the form of a thumb drive.  ECF Doc. 19.

Body Camera") (encounter with Graham and Jones from Cvanciger's perspective).  Graham answered the door, told the officers she knew why the officers were there, and told the officers it was she who had been screaming.  ECF Doc. 16 at 18; ECF Doc. 18-1 at 2; Manjas Body Camera at 3:30-03:40; Cvanciger Body Camera at 03:30-03:39.

At Officer Cvanciger's request, Graham exited, moved a few feet away from the entryway, and informed the officers what had happened.  ECF Doc. 18-1 at 2; Manjas Body Camera at 03:40-04:05; Cvanciger Body Camera at 03:39-04:06.  Graham told the officers she had cheated, leading to a "bad fight" in which she and her partner (who had at this point not yet been identified as Jones) were screaming and yelling at each other.  ECF Doc. 18-1 at 2; Manjas Body Camera at 04:06-04:19; Cvanciger Body Camera at 04:07-04:18.  Graham added that she was "fine," denied any sort of physical altercation, and clarified their fight was purely verbal. ECF Doc. 16 at 17-18; ECF Doc. 25 at 1; Manjas Body Camera at 04:20-04:35; Cvanciger Body Camera at 04:19-04:34.  The officers obtained Graham's name and social security number. Manjas Body Camera at 04:36-05:24; Cvanciger Body Camera at 04:35-05:21.

All the while, the apartment door was cracked open, through which Jones could be seen coming in and out of view as Graham communicated her identifying information.  Manjas Body Camera at 04:02-05:27.  At Officer Manjas's request, Jones came to the door.  ECF Doc. 16 at 19; Manjas Body Camera at 05:27-05:36; Cvanciger Body Camera at 05:25-05:36.  Jones told the officers he was the one who "lives here," refused Officer Manjas's request to come outside, and – after Officer Manjas explained they were there in response to a "disturbance" complaint – told the officers Graham had already explained it all.  Manjas Body Camera at 05:36-05:51; Cvanciger Body Camera at 05:37-05:51.  Jones then refused the officers' request for his social security number and two requests for his name, address, and date of birth, and the officers

informed Jones that if Jones did not identify himself, he would be arrested. ECF Doc. 18-1 at 3; ECF Doc. 25 at 1; Manjas Body Camera at 05:51-06:20; Cvanciger Body Camera at 05:51-06:20. At that point, Officer Manjas moved away from the doorway with Graham and the parties' perspectives of what transpired diverged. Manjas Body Camera at 06:21-06:27.

### B.   Officer Cvanciger's Perspective

According to Officer Cvanciger's body camera, Jones moved further into the apartment and refused two more requests for his name. Cvanciger Body Camera at 06:14-06:29. Officer Cvanciger instructed Jones to come outside, and Jones refused, telling the officer he was about to talk to the officer through the door. *Id.* at 06:30-06:37. Officer Cvanciger told Jones that he would be under arrest if he did not exit the apartment. *Id.* at 06:37-06:42. Jones pulled out a cell phone, made a call, and told Officer Cvanciger his name. *Id.* at 06:38-07:00. Officer Cvanciger took out a notepad and asked Jones for his social security number, which Jones said he did not know. *Id.* at 07:00-07:03. Officer Cvanciger asked Jones for his name again. *Id.* at 07:04-07:06. Jones did not respond and instead began speaking on the phone, describing to the other person on the line what was happening and inquiring into his rights, and refused to tell Officer Cvanciger who he was speaking to. *Id.* at 07:06-07:39.

Officer Cvanciger told Jones that if he did not identify himself, he would be under arrest, and Jones responded his name was already on the body camera footage and that he was not stepping outside. *Id.* at 07:39-07:50. Officer Cvanciger warned Jones he did not want to come inside and "get" him, and Jones responded Officer Cvanciger did not have to because he was not a threat. *Id.* at 07:50-07:55. Officer Cvanciger declared to Jones that he was under arrest, entered the apartment, instructed Jones to turn around, and grabbed and pulled Jones's free hand. *Id.* at 07:56-08:01. Jones took a step back and said he had already provided his name. *Id.* at

6

08:01-08:03.  Officer Cvanciger told Jones to "stop pulling away" and Jones stumbled toward the door.  *Id.* at 08:03-08:04.  As Jones reached the door, Graham lunged toward the door and she was restrained by Officer Manjas.  *Id.* at 08:04-08:15.

Standing behind Jones, Officer Cvanciger walked Jones to the wall across from the apartment door, with both Jones and Officer Cvanciger facing the wall.  *Id.* at 08:05-08:14.  Officer Cvanciger was holding Jones's right wrist, and Jones held a cellphone in his right hand.  *Id.* at 08:14-08:15.  Officer Cvanciger instructed Jones to let go of the phone and, as the phone went out of view, Officer Cvanciger told Jones, "Listen, we can either go to the ground."  *Id.* at 08:15-08:21.  Jones responded, "We don't need to go," but before Jones could finish the video depicted Jones's right hand (still held by Officer Cvanciger by the wrist) move toward Jones's chest and then upwards and Officer Cvanciger's arm move upwards towards Jones's head.  *Id.* at 08:21-08:24.  The camera became obstructed, and the video went dark.  *Id.* at 08:24-08:25.

The next clear footage depicted Jones kneeling over Officer Cvanciger (who was on his back) and saying, "Stop, dude, stop.  Stop."  *Id.* at 08:25-08:28.  Jones had his hands raised to his shoulders with his palms facing outward.  *Id.* at 08:27-08:28.  A red dot could be seen flashing over Jones.  *Id.*  Officer Cvanciger proceeded to move his hand toward his chest and Jones's hand could be seen moving towards Officer Cvanciger.  *Id.* at 08:28-08:31.  The camera was obstructed, after which Jones was on the floor way from Officer Cvanciger.  *Id.* at 08:31-08:34.  Graham moved toward Jones, with Officer Manjas following behind brandishing a taser with two wires extending towards Jones.  *Id.* 08:32-08:34.  Officer Cvanciger brandished his own taser and instructed Graham to get on the ground and turn over, after which Officer Cvanciger apprehended her.  *Id.* 08:34-09:00.

### C.      Officer Manjas's Perspective

Viewing Officer Cvanciger's exchange with Jones from outside the apartment, Officer Manjas's body camera footage confirmed that Jones stumbled toward the apartment door and Graham attempted to intervene.  Manjas Body Camera at 08:00-08:08.  Officer Manjas grabbed Graham, took her away from the doorway, instructed her to get down and face the ground, and held her hand while Officer Cvanciger walked Jones to the wall.  *Id.* at 8:08-8:21.  From the body camera, only Officer Cvanciger and Jones's feet were visible.  *Id.* at 08:21.  Officer Cvanciger had his left foot between Jones's feet and his right foot a few feet behind.  *Id.*  Officer Cvanciger's left foot moved from between Jones's feet to outside Jones's left foot.  *Id.* at 08:21-08:23.  Jones's right foot moved to behind his left foot, while Officer Cvanciger's left foot moved farther back.  *Id.* at 8:23-08:24.

After some further shuffling of the feet, Officer Cvanciger could be seen falling backwards to the floor with his arms outstretched and wrapped behind Jones's head.  *Id.* at 08:24-08:27.  Jones's right hand was still clutching his phone, while Jones's left arm was raised and his palm facing forward.  *Id.* at 08:28.  Officer Manjas pulled out his taser, aimed it at Jones, and yelled, "Get on the ground or I'm gonna tase you now!"  *Id.* at 08:26-08:29.  As Officer Manjas yelled his instruction, Officer Cvanciger reached to his chest, removed the strap covering his taser, and grabbed the taser.  *Id.* at 08:28-08:30.  Officer Cvanciger began pulling the taser out of his holster, when Jones looked down and gripped the taser over Officer Cvanciger's hand.  *Id.* at 08:30-08:32.  A loud pop sound followed, and Jones went out of view of the body camera.  *Id.* at 08:32-08:33.  Officer Manjas turned, revealing Jones lying on the ground, rolling side to side clutching his chest.  *Id.* at 08:33-08:34.  Officer Manjas instructed Jones to get on the

ground, Jones turned face downwards, and Officer Manjas restrained Jones.  *Id.* at 08:34-09:24.
Wires could be seen extending from Officer Manjas's taser to Jones.  *Id.* at 09:35-09:45.

In his declaration, Officer Manjas stated that his attention was directed at Graham while
Officer Cvanciger was with Jones.  ECF Doc. 18-1 at 3.  All he saw was shuffling of feet from
the corner of his eye.  *Id.*  He only turned his attention towards Officer Cvanciger when he heard
a thump, after which he saw Officer Cvanciger lying on the ground.  *Id.*  Officer Manjas stated
he fired his taser in response to Jones placing his hand on top of Officer Cvanciger's hand
holding the taser.  *Id.*  Officer Manjas stated that Officer Cvanciger was in danger at that moment
because Cvanciger's taser was pointed towards his chin, which, if discharged, would have killed
him.  ECF Doc. 18-1 at 4.

### D.    Jones's Perspective

According to Jones's deposition testimony, he did not pull back from Officer Cvanciger
when Officer Cvanciger came inside the apartment to arrest him.  ECF Doc. 16 at 24.  When
Jones was against the wall, Officer Cvanciger either lost his balance or got they got their feet
entangled, which led to Officer Cvanciger falling as Jones kneeled down.  ECF Doc. 16 at 24.
Jones testified it was Officer Manjas and not Officer Cvanciger who shot Jones with the taser.
ECF Doc. 16 at 25-26.

## III.   Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as
to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  A genuine dispute of fact exists when "there is sufficient evidence favoring the
nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986).  The moving party bears the initial burden of establishing the absence

of a genuine dispute of fact, either by pointing to evidence so establishing or by pointing out an absence of evidence to support the nonmovant's case.  Fed. R. Civ. P. 56(c)(1)(A)-(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  The burden then shifts to the nonmovant to show that there is a genuine dispute of fact.  *Anderson*, 477 U.S. at 248-50.  To do so, the nonmovant may not rely on his pleadings; he must set forth "specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324.  The relevant question at all times is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

In determining whether a genuine issue of fact exists, "the evidence is construed, and all reasonable inferences are drawn, in favor of the nonmoving party."  *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013).  But there is "an added wrinkle" when, as here, there is video evidence.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  We view the facts in light of the videos to the extent they "show facts so clearly that a reasonable jury could view those facts in only one way."  *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).  Any relevant gaps or uncertainties, however, are viewed in the light most favorable to the nonmovant.  *Id.* at 544, 547.

## IV.    Evidentiary Challenge

The defendants object to Jones's signed declaration and seek an order striking it as untimely, given that it was filed out of time and without leave of court.  ECF Doc. 26 at 1-3.  The defendants suggest that Jones's declaration "borders on perjury" because it "persists in asserting a state of affairs and sequence that are … pure fiction" when contrasted with the video footage.  ECF Doc. 26 at 3-4.  At the same time, however, they concede that the declaration "raises nothing new" and benefits defendants' position because Jones admitted to reaching for Officer Cvanciger's taser.  ECF Doc. 26 at 4.

The defendants' objection must be sustained, albeit on different grounds.  The defendants are correct that Jones's declaration was untimely.  It was filed after the dispositive motion deadline, after Jones filed his opposition brief, and without leave of court.  Untimeliness alone, however, would not foreclose us from considering Jones's declaration. *Thomas v. Harvey*, 381 F. App'x 542, 546 (6th Cir. 2010).  Although not raised by the defendants, there is a more fundamental deficiency in Jones's declaration that cannot be overlooked: it does not assert that it was made under penalty of perjury.  ECF Doc. 25; 28 U.S.C. § 1746 (requiring unsworn declarations to be made under penalty of perjury).  A declaration that is not made under penalty of perjury "is not competent summary-judgment evidence." *Rogers v. Henry Food Health Sys.*, 897 F.3d 763, 767 n.1 (6th Cir. 2018); *see also Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 343-44 (6th Cir. 2012).  Thus, Jones's declaration assertions cannot be considered in determining whether summary judgment is proper. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("The report is not sworn, nor is it made under penalty of perjury.  Accordingly, it cannot be considered on summary judgment.").  Defendants' motion to strike (ECF Doc. 26) is GRANTED and Jones's declaration (ECF Doc. 25) will be STRICKEN from the record.

## V.     Motion for Summary Judgment

### A.     Forfeiture

The defendants in their reply brief argue that summary judgment is warranted on Counts Two through Four solely on the basis that Jones's opposition brief does not oppose summary judgment on those counts.  ECF Doc. 23 at 1.  They are correct that Jones has not expressed himself on whether summary judgment is warranted on Counts Two through Four.  ECF Doc. 22.  But the Sixth Circuit has made clear that "a district court may *not* use a party's failure to respond (in whole or in part) as a reason for granting summary judgment." *Briggs v. Univ. of*

*Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015) (emphasis added); *see also FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).  This is because the burden at summary judgment the burden is on the *movant* to establish the nonexistence of a material fact.  *E.M.A. Nationwide, Inc.*, 767 F.3d at 630.  Even if unopposed, we "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists."  *Id.*[6]  With that in mind, we proceed to address the merits.

### B.    Count Two: Eighth Amendment Use of Excessive Force

The defendants argue that they are entitled to judgment as a matter of law on Jones's Eighth amendment use of excessive force claim because the force Jones complains of did not occur subsequent to a conviction.  ECF Doc. 17 at 5-6.

Excessive force claims can be raised under the Fourth, Eighth, and Fourteenth Amendments, and the applicable amendment varies depending on the status of the plaintiff at the time of the use of force.  *Burgess*, 735 F.3d at 472.  The Fourth Amendment applies to force used against free citizens, the Eighth Amendment applies to force used against convicted persons, and the Fourteenth Amendment applies to the gray area in between (such as with pretrial detainees).  *Hopper v. Plummer*, 887 F.3d 744, 751-52 (6th Cir. 2018); *Burgess*, 735 F.3d at 472.

The court agrees that Jones's Count Two claim must be dismissed as a matter of law. Jones does not allege that he was convicted of a crime at the time he was tased.  *See generally* ECF Doc. 11.  And he testified that before the charges stemming from the July 26, 2018 incident,

---

[6] The court notes with disapproval defendants' misrepresentation of Sixth Circuit precedent.  In support of their forfeiture argument, they purport to quote *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013): "Failure by a plaintiff to respond to a motion for summary judgement constitutes a forfeiture of the claims to which the motion is addressed." ECF Doc. 23 at 1 n.1. *Notredan, L.L.C.* said nothing of the sort.  The case doesn't even concern a motion for summary judgment.  Rather, the case concerned an appeal following the grant of a motion to dismiss.  *Notredane, L.L.C.*, 531 F. App'x at 567-68.  And the Court addressed forfeiture as to arguments not raised before the district court.  *Id.* at 569.

he had never been convicted of a crime.  ECF Doc. 16 at 12-13.  Thus, he cannot maintain an

excessive force claim under the Eighth Amendment for the officers' use of a taser.  *Cramer v.

Genesee Cnty.*, No. 18-CV-10115, 2018 U.S. Dist. LEXIS 99761, at *6 (E.D. Mich. June 14,

2018); *Mellencamp v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:07-CV-325, 2009 U.S. Dist.

LEXIS 33139, at *9-10 (W.D. Ky. Apr. 15, 2009); *Goodwin v. Hamilton, Cnty.*, No. 1:05-cv-71,

2008 U.S. Dist. LEXIS 140337, at *24 (E.D. Tenn. Mar. 31, 2008).  Jones's Count Two Eighth

Amendment claim must be DISMISSED.

### C.    Count One: Fourth Amendment Use of Excessive Force

The defendants argue that Officer Manjas and Officer Cvanciger are entitled to qualified

immunity from Jones's Count One Fourth Amendment use of excessive force claim.  ECF Doc.

17 at 7-15.  They argue Officer Manjas is protected by qualified immunity because Officer

Manjas's use of force was objectively reasonable, because, although Jones's suspected crime was

not severe, he posed an immediate threat and was actively resisting arrest.  ECF Doc. 17 at 12-

15.  Specifically, they argue Jones became an immediate threat when he placed his hand on

Officer Cvanciger's taser, causing it to point upward and towards Officer Cvanciger's head.

ECF Doc. 17 at 13.  And they argue Jones was actively resisting arrest, given the video footage

of "a struggle" between Jones and Officer Cvanciger and Jones's act of grabbing Officer

Cvanciger's hand over the taser.  ECF Doc. 17 at 14-15.  As for Officer Cvanciger, the

defendants argue he's not liable because there's no evidence that he deployed his taser upon

Jones.  ECF Doc. 17 at 13.

Jones responds that the officer defendants are not entitled to qualified immunity, though

he does not bifurcate his analysis as to which argument pertains to which officer.  ECF Doc. 22

at 4-6.  He argues there was no need to seize him in the first place or use a taser because there

was no evidence of domestic violence and his crime was at best not giving up his identifying information.  ECF Doc. 22 at 5.  Jones argues there is a genuine dispute of material fact as to whether he was actively resisting arrest or posed an immediate threat, given the limited camera footage of his feet entangling with Officer Cvanciger's, the fact he "calmly" walked out of his apartment with Officer Cvanciger, and his acquiescence to Officer Manjas's order to get on the ground by raising his hands.  ECF Doc. 22 at 5-6.  He also argues that the force used was "deadly," given the proximity of the taser to his head.  ECF Doc. 22 at 6.  And Jones argues that there is a clearly established constitutional right to be free from the use of excessive force, citing *Graham v. Connor*, 490 U.S. 386 (1989).  ECF Doc. 22 at 5.

The defendants reply that Jones's citation of a general principle of law – the right to be free from the use of excessive force – does not establish a violation of a constitutional right with a sufficient degree of specificity to defeat their claim of qualified immunity.  ECF Doc. 23 at 2. They argue that the use of a taser is not deadly force as a matter of law.  ECF Doc. 23 at 3-4. They argue that the use of a taser was justified because the video evidence showed that Jones resisted, because, had he not resisted, no struggle would have been visible on the video and Officer Cvanciger would not have had his hands around Jones's neck.  ECF Doc. 23 at 5-6. They argue still images of the video evidence showed that Officer Cvanciger's taser was not pointed at Jones's head or torso and Jones was pushing the taser "while he continued to resist arrest."  ECF Doc. 23 at 6-7.  They argue that Ohio law does not allow individuals to resist unlawful arrests.  ECF Doc. 23 at 8.  The defendants further argue that, to the extent Jones contends the validity of his arrest, he cannot raise such a claim for the first time in his response to a motion for a summary judgment.  ECF Doc. 23 at 9-10.

### 1.      Qualified Immunity and Fourth Amendment Standards

Under the doctrine of qualified immunity, public officials are immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  Whether qualified immunity applies depends on whether: (1) the public official's conduct violated a constitutional right; and (2) that right was clearly established at the time.  *Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020).  The burden is on the plaintiff to show that the answer to both questions is "Yes."  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).  If either answer is "No," qualified immunity shields the defendant officer from liability.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  When, as here, more than more officer is involved, each officer's entitlement to qualified immunity must be considered separately.  *Wright v. City Euclid*, 962 F.3d 852, 865 (6th Cir. 2020).

The Fourth Amendment protects against unreasonable seizures, which includes the right to be free from the use of excessive force.  *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017).  Whether the degree of force employed by an officer was excessive is determined objectively: we ask whether the officer's use of force was "'objectively reasonable' in light of the facts and circumstances confronting [him], without regards to [his] underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).

Although reasonableness is determined based on the totality of the circumstances, *Graham* highlighted three factors that guide our analysis: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."  *Roell v.*

*Hamilton Cnty.*, 870 F.3d 471, 480-81 (6th Cir. 2017) (quotation marks omitted).  In evaluating the *Graham* factors, we judge the officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  490 U.S. at 396.  And in the Sixth Circuit, "we consider the officer's reasonableness under the circumstances he faced at the time he decided to use force."  *Thomas*, 854 F.3d at 365.

### 2.    False Arrest

Before addressing Jones's use of excessive force claims against the officer defendants, we briefly address the defendants' reading of Jones's opposition brief, which they contend "alludes to questions about the validity of the initial arrest."  ECF Doc. 23 at 9.  The defendants point to Jones's statement of facts, in which Jones contends there was a disparity between the officers' characterization of their investigation (a wellness check) and what the defendants now claim it was – a concern about domestic violence and/or disorderly conduct.  ECF Doc. 23 at 9; *see* ECF Doc. 22 at 3.

The court disagrees with the defendants' reading of Jones's opposition brief.  Jones argues that he seeks damages "for the use of Excessive Force."  ECF Doc. 22 at 4.  Although he claims there was "no need to seize" him, Jones makes that assertion in his analysis of the severity of the offense.  *Id.* at 5.  Whether or not the arresting officer had probable cause to arrest someone is relevant to the first *Graham* factor.  *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006); *see also Wright*, 962 F.3d at 866-67.[7]

---

[7] The court notes that the facts section of Jones's complaint mentions "false arrest."  ECF Doc. 11 at 4. But he does so in conjunction with his assertion that the institution of criminal charges against him was "unjustified."  *Id.*  In context, Jones's "false arrest" language appears to be a holdover from his initial complaint, in which he alleged a common law malicious prosecution claim.  ECF Doc. 2 at 4, 6-7; *see Trussel v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 144 (Ohio 1990) (noting that the lack of probable cause is an essential element of a malicious prosecution claim).

### 3. Use of Excessive Force: Officer Manjas

#### a. Constitutional Violation

As the defendants concede, the first *Graham* factor (severity of the crime) weighs in Jones's favor because, at worst, he committed a minor misdemeanor.  ECF Doc. 17 at 12.  The defendants' concession notwithstanding, the court expresses its doubt on whether there was probable cause to believe Jones had committed – as the defendants claim – disorderly conduct by making unreasonable noise at the time he was arrested for not providing adequate proof of his identity.  ECF Doc. 17 at 2, 12; Ohio Rev. Code § 2917.11(E)(2) (classifying disorderly conduct generally as a minor misdemeanor); Ohio Rev. Code § 2935.26(A)(2) (authorizing arrest for minor misdemeanors if the offender can't or won't offer satisfactory evidence of his identity).  The officer defendants were present in response to Bell's report of hearing screaming and banging on the wall coming from Jones's apartment, which could reasonably raise concerns of domestic violence, at worst, or disorderly conduct through making unreasonable noise, at best.  Ohio Rev. Code §§ 2917.11(A)(2), 2919.25(A)-(C); ECF Doc. 18-1 at 2.  But when the officers arrived at the scene, no noise could be heard coming from the apartment, and Graham denied that anything more than a verbal altercation between her and Jones had occurred and stated the altercation had concluded.  ECF Doc. 18-1 at 2; Video File VIDEO_20180726_151823_835.mp4 at 00:24-01:05; Manjas Body Camera at 00:27-03:40; Cvanciger Body Camera at 00:29-03:40.

Viewing the facts in the light most favorable to Jones, it is doubtful that the officers had probable cause to believe Jones had committed disorderly conduct given the lack of any noise at the time the officers arrived at the scene.  *Wright*, 962 F.3d at 872 (articulating the probable cause standard).  And Jones's defiance in giving identifying information and exiting his apartment would not have furnished probable cause to arrest him for obstruction of official

business. *Jones v. City of Elyria*, 947 F.3d 905, 915 (6th Cir. 2020). Nevertheless, because severity is not dispositive of whether the officers' use of force was reasonable, we proceed to the other *Graham* factors. *Thomas v. Plummer*, 489 F. App'x 116, 126 (6th Cir. 2012) ([T]he use of force can be reasonable, even when the crime at issue is innocuous."); *see also Wright*, 962 F.3d at 867 (proceeding to the second and third *Graham* factors when there was no probable cause to arrest the plaintiff).

As for the second *Graham* factor (immediate threat), the court concludes that a reasonable trier of fact could only conclude that it weights in favor of Officer Manjas. From Officer Manjas's perspective, as depicted in the body camera footage and viewed in the light most favorable to Jones, Jones was unarmed, did not make verbal threats of violence, at most stumbled while being escorted outside of his apartment, and was escorted out of the apartment to the wall without incident. Manjas Body Camera at 05:30-08:20; *Latits*, 878 F.3d at 544, 547. Officer Manjas did not see the exchange between Officer Cvanciger and Jones at the wall. ECF Doc. 18-1 at 3. And when his attention returned to Officer Cvanciger, although Officer Cvanciger was on the floor, Jones faced Officer Manjas with his hands raised. Manjas Body Camera at 08:22-08:29.

However, the relevant question is whether it was objectively reasonable for Officer Manjas to perceive Jones as a threat at the time he used the taser. *Graham*, 490 U.S. at 396; *see also Stephan v. Heinig*, 676 F. App'x 466, 468-69 (6th Cir. 2017). At that time, Jones grabbed Officer Cvanciger's taser over Officer Cvanciger's hand. Manjas Body Camera at 08:29-08:31. A reasonable officer in Officer Manjas's position could reasonably have perceived Jones to be a threat to Officer Cvanciger at that moment.

Before continuing, we note that a heightened standard applies when deadly force is used. Deadly force is allowed only when the officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Jones argues that the use of a taser constituted "deadly force," without specifying whether this meant Officer Manjas's use of a taser or Officer Cvanciger's attempt to unholster his taser. ECF Doc. 22 at 6. Nevertheless, Jones cites no authority to support any argument that shooting a taser at someone's torso constitutes the use of deadly force. *See generally* ECF Doc. 22. Although the Sixth Circuit has not directly expressed itself on the issue, it has described the use of a taser as "*non-lethal* force." *Rucinski v. County of Oakland*, 655 F. App'x 338, 342 (6th Cir. 2016) (emphasis in original); *see also Sheffey v. City of Covington*, 564 F. App'x 783, 791 (6th Cir. 2014) ("less-than-lethal taser in probe mode"); *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 638 (6th Cir. 2013) ("non-lethal, temporarily incapacitating force such as a taser" (quotation marks and alterations omitted)). And no evidence has been presented from which a reasonable juror could conclude that shooting a taser at someone's torso in the circumstances of this case created a "substantial risk of death or serious bodily harm." *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988) (quotation marks omitted) (defining deadly force and holding that the use of a police dog did not carry with it a substantial risk of causing death or serious bodily harm, even though the use of a police dog resulted in death).

Returning to the *Graham* factors, the court concludes that a reasonable trier of fact could only conclude that the third *Graham* factor (active resistance to arrest) weights in favor of Officer Manjas. The Sixth Circuit has distinguished between "active" and "passive" resistance. *Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017). Examples of active

resistance include "physically struggling, threatening, or disobeying officers." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (quotation marks omitted).  For disobedience to constitute active resistance, however, it must be more than noncompliance.  *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013).  The noncompliance must be paired either with verbal hostility or a "deliberate act of defiance using one's own body." *Id.*  A deliberate act of defiance can include "refusing to comply with the officers' demands that the [plaintiff] roll over and by physically attempting to stand up." *Kapuscinski v. City of Gibraltar*, 821 F. App'x 604, 613 (6th Cir. 2020).

Looking at the video evidence, we cannot, as the defendants urge, infer active resistance from the "footwork" visible on Officer Manjas's camera preceding the arrest.  ECF Doc. 17 at 14.  Nor can we infer active resistance from the fact that Officer Cvanciger had his hands around Jones's neck.  ECF Doc. 23 at 5.  Officer Manjas saw "footwork" from the corner of his eye and only saw the end result, Officer Cvanciger on the floor with his hands around Jones's neck.  ECF Doc. 18-1 at 3; Manjas Body Camera at 08:22-08:27.  The video evidence doesn't directly contradict Jones's testimony that Officer Cvanciger fell because he lost his balance.  ECF Doc. 16 at 25.  A genuine dispute of fact would therefore exist as to whether Jones was actively resisting arrest up to that point because a reasonable juror could credit Jones's version of events.  *Latits*, 878 F.3d at 544, 547.  However, what transpired after Officer Cvanciger was on the ground is a different story.  Officer Manjas saw Officer Cvanciger in a compromised position, and he instructed Jones to get on the ground with a warning that he would be tased if he did not comply.  Manjas Body Camera at 08:29-08:30.  Jones didn't get on the ground. *Id.*  He went further and grabbed Officer Cvanciger's taser over Officer Cvanciger's hand. *Id.* at 08:30-08:31.  A reasonable officer in Officer Manjas's position could reasonably perceive Jones's actions as

actively resisting arrest: noncompliance coupled with a physical act of defiance.  *See Kapuscinski*, 821 F. App'x at 613.  Further, as discussed below, it would be error for us to impose a standard that required the officer to conduct a dissected, part-by-part conduct analysis at the time he decided to use force.  Officer Manjas's use of force must be evaluated in light of the totality of the circumstances he had faced.  And the final action by Jones – to apparently grab for Officer Cvanciger's taser weapon – justified the deployment of his Manjas's taser.

Jones appears to suggest that the third *Graham* factor weighs in his favor because his resisting arrest charge was "dismissed against him."  ECF Doc. 22 at 6.  For that to be true, however, the precise issue of whether he actually resisted arrest "must have been raised and actually litigated in the prior proceeding."  *Polk v. Hopkins*, 129 F. App'x 285, 290 n.3 (6th Cir. 2005).  No evidence has been presented to us indicating that the trial court made a finding that Jones did not resist arrest.  Jones has not otherwise attempted to establish that issue preclusion bars our consideration of whether he resisted arrest.  *Shepherd v. Sheldon*, No. 1:11 CV 127, 2012 U.S. Dist. LEXIS 51323, at *13-14 (N.D. Ohio Apr. 12, 2012) (listing the elements for issue preclusion under Ohio law: (1) privity between the parties; (2) a final judgment on the merits after a full and fair opportunity to litigate the issue; (3) actual adjudication of the issue and the issue must have been necessary to the judgment; and (4) identicality between the issues in the two cases).  And a review of the state court dockets suggests that Jones was not tried on the resisting arrest charge, given that it was not included in the indictment.

Although we have determined that reasonable minds would not differ in concluding that two of the *Graham* factors to weigh in favor of Officer Manjas, that doesn't end our analysis.  The overarching determination is whether the totality of the circumstances justified Officer Manjas's use of the taser on Jones.  *Zuress v. City of Newark*, 815 F. App'x 1,6-7 (6th Cir. 2020).

In making that determination, "we give a measure of deference to the officer's on-the-spot judgment about the level of force necessary," especially when the events in question happened quickly.  *Brax v. City of Grand Rapids*, 742 F. App'x 952, 956 (6th Cir. 2018).  The totality of the circumstances, when viewed from the perspective of a reasonable officer in Officer Manjas's position – witnessing an arrestee struggle with another officer over control of the officer's taser – supports the conclusion that a single deployment of a taser was not unreasonable.  *Cf. Marshall v. City of Farmington Hills*, 693 F. App'x 417, 424 (6th Cir. 2017) (holding that it was reasonable for an officer to tase the plaintiff, even though both parties agreed the crime was nonsevere and the plaintiff was not resisting arrest, when the officer defendant witnessed the plaintiff place his hand on the plaintiff's gun); *see also Rudlaff*, 791 F.3d at 642 ("A reasonable police officer observing this scene in the heat of the moment did not need to give Carpenter any more time to comply before tasing him.").  Therefore, Officer Manjas did not violate Jones's Fourth Amendment rights.

### b.  Clearly Established Right

Even if Officer Manjas's use of force was not objectively reasonable, Jones has not met his burden to show that Officer Manjas violated a clearly established right – *i.e.*, that his conduct was clearly unconstitutional at the time he used the taser.  *Roberts v. Coffee Cnty*, 826 F. App'x 549, 552 (6th Cir. 2020); *see also Colson v. City of Alcoa*, No. 20-6084, ___ F. App'x ___ 2021 U.S. App. LEXIS 26532, at *20 (6th Cir. Sept. 1, 2021) (unreported) ("The plaintiff has the burden of showing that the right was clearly established.").  He merely cites the general proposition that "there is clearly a constitutional right to be free from excess force."  ECF Doc. 22 at 5.  That showing is not enough to meet his burden.  The Supreme Court has cautioned courts "not to define clearly established law at a high level of generality."  *City of Escondido v.*

*Emmons*, 139 S. Ct. 500, 503 (2019) (quotation marks omitted) (holding that the court of appeals erred by defining the right as the "right to be free from excessive force"); *see also Littlejohn v. Myers*, 684 F. App'x 563, 569 (6th Cir. 2017) (stating that it was inappropriate to define the right as the "right to be free from excessive force" because it was too broad a level of generality); *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012) (stating that the general proposition that the Fourth Amendment prohibits excessive force was not particularly helpful to the issue of whether the violative nature of the officer defendant's conduct was clearly established).

The appropriate examination of whether a clearly established right was violated is context specific.  *See Beck v. Hamblen Cnty.*, 969 F.3d 592, 599-600 (6th Cir. 2020).  And the Sixth Circuit has identified two lines of cases relating to the use of tasers: (1) one line holding that "there is no clearly established right to not be tased when a suspect is actively resisting arrest"; and (2) another line holding that "there is a clearly established right not to be tased when the suspect is not actively resisting."  *Wright*, 962 F.3d at 870 (citations omitted).  As discussed above, there is no genuine dispute of fact that Jones was actively resisting arrest, so this case falls into the former category.

Qualified immunity therefore shields Officer Manjas from liability on Jones's Count One Fourth Amendment use of excessive force claim.

### 4.      Use of Excessive Force: Officer Cvanciger

The parties do not dispute that only Officer Manjas deployed his taser against Jones. ECF Doc. 16 at 25-26; ECF Doc. 18-1 at 3.  Jones's complaint does not even allege that Officer Cvanciger used a taser at all.  ECF Doc. 11 at 3.  Yet Jones's complaint alleges that both officer defendants are liable for use of excessive force by "assaulting him with the taser and inflicting

pain on him through the use of a taser." ECF Doc. 11 at 4.  Jones's opposition brief suggests that Officer Cvanciger used excessive force when he "pointed his taser directly at, and mere inches from [Jones's] head." ECF Doc. 22 at 6.  We'll accept this as the use of force at issue in Count One as it concerns Officer Cvanciger.

Jones has not shown that Officer Cvanciger's act of pointing a taser at him violated a clearly established right.  *Tlapanco v. Elges*, 969 F.3d 638, 656-57 (6th Cir. 2020) (recognizing that courts may address the clearly established prong when it is dispositive, without analyzing whether a constitutional violation occurred).  The relevant question is whether Officer Cvanciger was on notice on July 26, 2018 that the act of pointing a taser at an arrestee violated the Fourth Amendment.  *See Ouza v. City of Dearborn Heights*, 969 F.3d 265, 276 (6th Cir. 2020).  There did not need to be a case directly on point, but "existing precedent must have placed the … constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017).  As late as April 19, 2017, the Sixth Circuit noted that it "has never found that pointing a taser, as opposed to actually discharging one, constitutes the use of excessive force." *Evans v. Plummer*, 687 F. App'x 434, 442 (6th Cir. 2017) (footnote omitted).  And Jones has failed to identify a case since then in which, "an officer acting under similar circumstances as [Officer Cvanciger] was held to have violated the Fourth Amendment." *Id.* at 444 (quotation marks omitted); *Graves v. Malone*, 810 F. App'x 414, 419 (6th Cir. 2020) ("Whether a right is clearly established depends on whether an officer acting under similar circumstances was held to have violated the Fourth Amendment." (alterations and quotation marks omitted)); *see generally* ECF Doc. 22.

Because Jones has not shown that Officer Cvanciger's act of pointing a taser at him violated a clearly established right, qualified immunity shields Officer Cvanciger from liability on Jones's Count One Fourth Amendment excessive force claim.

24

### 5.    Count One Summary

Because Jones has failed to rebut the officer defendants' assertion of qualified immunity from liability on his claim, they are immune from liability; defendants' motion for summary judgment on Jones's Fourth Amendment excessive force claim must be GRANTED.

### D.    Counts Three and Four: *Monell* Claims

The defendants argue that Jones's Count Three *Monell* claim is insufficiently pleaded in the complaint because Jones has not alleged what custom or policy is at issue.  ECF Doc. 17 at 17.  The defendants further argue they are entitled to judgment as a matter of law because Jones has produced no evidence showing that Highland Hills was on notice of any habitually unconstitutional conduct.  *Id.*  They argue summary judgment is warranted on Jones's Count Four claim for failure to train because there is no evidence of what the officers' training consisted of or of past violations by police.  ECF Doc. 17 at 18-20.

A municipality cannot be liable for the constitutional violation of its employees; rather, it can be liable under § 1983 only upon a showing that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of [plaintiff's] rights."  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  To establish the existence of a policy or custom, the plaintiff can point to: "(1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations."  *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015).

The defendants' challenge to Count Three is well taken.  Jones's Count Three claim does not specify what constitutional policy or custom is at issue that moved the officer defendants to violate his rights.  ECF Doc. 11 at 5.  The full breadth of Count Three states:

> Defendant Highland Hills is liable for this cause of action on the basis of having either a formal government policy or an informal custom and practices, that was promulgated by … Highland Hills, which precipitated the constitutional violations complained herein.  Further these policies, customs and practices of … Highland Hills were the moving force(s) behind the constitutional violations complained herein.

*Id.*  Jones's bare-bones *Monell* claim verges on implausible.  *See Thompson v. City of Memphis*, No. 10-2475, 2011 U.S. Dist. LEXIS 131811, at *14 (W.D. Tenn. Nov. 15, 2011) (dismissing similarly threadbare *Monell* claim); *Buster v. City of Cleveland*, No. 1:09 CV 1953, 2010 U.S. Dist. LEXIS 4696, at *23-24 (N.D. Ohio Jan. 21, 2010) (same).

Nevertheless, the court finds that summary judgment is appropriate on Count Three because of the absence of any evidence to support it.  Jones has submitted no evidence concerning legislative enactments or official policy of Highland Hills.  *See Baynes*, 799 F.3d at 621.  Neither of the officer defendants has been alleged, nor has the evidence suggested, they had had any sort of decision-making authority.  *See id.*  And Jones has not alleged or submitted evidence of prior incidents of misconduct by Highland Hills employees, which is a prerequisite to liability on a theory of inaction; and his own alleged mistreatment is no substitute.  *Nouri v. County of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015).

All that's left is inadequate training and supervision, which happens to be the basis of Count Four.  In Count Four, Jones alleges that Highland Hills was deliberately indifferent to his constitutional rights by failing to train, supervise, discipline, or screen the officer defendants. ECF Doc. 11 at 5-6.  To establish liability for failure to train or supervise, Jones would have to show either: (1) prior instances of unconstitutional conduct showing that Highland Hills had

notice that its officers' training was deficient and likely to cause injury but chose to ignore it; or (2) a single violation of federal rights and that Highland Hills '"failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."'  *MacLean-Patterson v. Erie Cnty.*, 488 F. Supp. 3d 581, 590 (N.D. Ohio 2020) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019)).  Jones has presented no evidence of prior constitutional violations.  And he has presented no evidence concerning Highland Hills' training.  *Ouza*, 969 F.3d at 295 (requiring proof of a deficiency in training that caused the officer' indifference to the plaintiff's constitutional rights).  Last, the failure to discipline officers after-the-fact for a single incident is not a basis for municipal liability.  *Kies v. City of Lima*, 612 F. Supp. 2d 888, 901 (N.D. Ohio 2009); *Maynard v. Jackson Cnty. Ohio*, 706 F. Supp. 2d 817, 828 (S.D. Ohio 2010).

Because there is no evidence in the record supporting Jones's Counts Three and Four claims of municipal liability Highland Hills' motion for summary judgment must be GRANTED.

## VI.    Conclusion

In summary, the defendants' objection to Jones's declaration (ECF Doc. 26) is SUSTAINED, and Jones's declaration (ECF Doc. 25) is STRICKEN from the record.  The defendants' motion for summary judgment (ECF Doc. 17) is GRANTED and Jones's complaint (ECF Doc. 11) is DISMISSED as to all claims because: (1) Jones was not convicted at the time of the officer defendants' use of force; (2) Officer Manjas is entitled to qualified immunity because his use of the taser was objectively reasonable under the circumstances; (3) Officer Cvanciger is entitled to qualified immunity because it was not clearly established that pointing a taser violated Jones's Fourth Amendment right against the use of excessive of force; and

(4) there is no evidence from which a reasonable juror could find that Highland Hills was liable under § 1983.

      **IT IS SO ORDERED.**

Dated: November 30, 2021

                                               Thomas M. Parker
                                    United States Magistrate Judge